[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The marriage between the plaintiff, William Jenks and the defendant Jane Pinckney Jenks was dissolved on November 11, 1991. At that time, the court, Dranginis, J. incorporated by reference a stipulation, signed by the parties, by reference. A copy of the original stipulation is in many respects unintelligible and is attached to the original judgment.[1]
On January 21, 1992, the defendant filed a motion to reopen the judgment on the grounds that she entered into the stipulation under extreme emotional duress caused by both the long term emotional abuse from the plaintiff as well as the circumstances of negotiations in the courthouse and also the result of undue influence. On April 24, 1992, the court Susco, J. granted the motion to reopen finding that "the agreement was the product of duress" and therefore set aside that portion of the judgment dealing with the disposition of property.
The parties were married on May 4, 1974 and have no children. At the present time the plaintiff is forty one years old and the defendant forty two. Mr. Jenks claims that his wife's super education and social position caused friction in the marriage. While the defendant's family generously contributed financial support, the court cannot find that any difference in background caused the breakdown. It is of interest that the defendant does not wish a return to her more socially prominent maiden name. Nor does it appear that Mrs. Jenks' use of alcohol precipitated the breakup. CT Page 11793
The primary problems in the marriage were the work habits of Mr. Jenks and sexual incompatibility. The plaintiff was a workaholic who spent long hours not only at his employment, but also assisting friends while ignoring chores at his own residence. The evidence disclosed that Mrs. Jenks had been sexually assaulted while a young girl and that Mr. Jenks' sexual desires brought back painful memories to the defendant. While neither party may be completely to blame for the failure of the marriage, the court assesses a greater part to the plaintiff.
At the present time, the plaintiff is employed as a building official earning $865.00 per week although his income is somewhat flexible as he has control over changes and the number of inspections. The defendant is employed as a medical secretary earning $524.27 per week. The parties own jointly a home in Cornwall Bridge valued at $374,500.00 with a mortgage between $121,000.00 and $124,000.00. There is a joint savings account, stocks and deferred compensation plans.
At the present time, Mr. Jenks occupies the family home with his secretary, her son and an unrelated family, none of whom pay rent. While his secretary was married, the plaintiff loaned $10,000.00 of family funds to her which has not been repaid due to bankruptcy.
Based upon the evidence, the length of the marriage, General Statutes 46b-81 and 46b-82, the health of the respective parties, their employability, and their needs, the court enters the following orders:
1. A. The real estate jointly owned by the parties shall be sold at a mutually agreeable price with a mutually agreeable real estate broker. The court shall retain jurisdiction over the sale of the real estate until it is sold. Upon the sale of the real estate, the existing mortgages, realtor's commissions, conveyance taxes and customary closing costs shall be paid from the proceeds and the net proceeds received from the sale shall be divided as follows: 60% to the defendant and 40% to the plaintiff.
B. Until the real estate is sold, the plaintiff shall pay all costs associated with the real estate, including but not limited to the mortgage, taxes, insurance and utilities.
C. In the event any portion of the property is rented, the parties shall share equally all rent received.
2. Upon the sale of the real estate, the plaintiff shall pay to the defendant the sum of $10,000.00 representing the funds the plaintiff loaned to his secretary, now his live-in companion. CT Page 11794
3. The plaintiff shall pay as periodic alimony the amount of $100.00 per week to the defendant until January 1, 2002 or for a period of 9 years. This period represents less than one half of the length of the marriage.
4. The plaintiff shall maintain life insurance on his life in the amount of $50,000.00 for so long as he has an obligation to pay alimony and shall name the defendant as irrevocable beneficiary.
5. A. The defendant shall retain ownership of the following shares of stock that she had received as a gift from her parents and the plaintiff shall execute whatever documents are necessary to transfer the interest he may have in said stock to the defendant: Rockefeller Center, Ohio Edison and Peoples Energy.
B. The balance of the stock owned by the parties shall be divided equally between them. In the event the parties can agree, they may determine an equal division of the remaining stock.
6. All savings and other accounts owned jointly by the parties shall be divided equally.
7. The plaintiff shall transfer one-half of his profit sharing account to the defendant representing one-half of the funds jointly available to the parties that were deposited into the plaintiff's profit sharing account.
8. The plaintiff shall assign to the defendant all of his right, title and interest in and to the 1990 Volvo now being operated by her. The defendant will assign to the plaintiff all of her right, title and interest in and to the 1988 Ford truck and any other business vehicles or equipment used by the plaintiff. The defendant will receive a $3,000.00 credit for business equipment upon the sale of the home.
9. The parties have previously divided their furniture, furnishings, and personal property. The Simplicity tractor will be sold after the sale of the house and the proceeds divided equally.
10. The plaintiff shall assume all of the business debt attributable to his business and hold the defendant harmless therefor.
11. A. The parties shall be responsible for their own errors and omissions in connection with filing of any past federal and state income tax returns. In the event there is any penalty or interest charged by the IRS on any jointly filed federal income tax return, the parties shall be ordered to be responsible for that part of said penalty or deficiency or interest attributable to the income of that party and shall indemnify CT Page 11795 and hold each other harmless thereon.
B. With regard to the 1991 and 1992 income tax returns, each party will be entitled to deductions for mortgage, interest and taxes actually paid by each party.
C. With respect to dividends received by the parties in 1991, they shall be apportioned for tax purposes to the stocks which each receives in the division.
PICKETT, J.